Mr. Richards. Thank you, Your Honor. Your Honor, my name is Stephen Richards, and I represent the appellant in this case, Don Meadows. I know the case is titled against the Rockford Housing Authority. As Your Honor is aware, that is no longer... Right, unless they've fallen off the wayside, yes. The real defendants are Novak and Hodges, and Novak in particular. Your Honor, I think the interest of this case, which is unusual to me, even though maybe not to the court, is this. One is procedure and one is substance. The procedure that's interesting is that this was an issue raised swastika by the district court on their own, the 56B2 motion. But, of course, as he cites, the district court is entitled to do that under 56F, assuming the district court gives the opportunity to the parties to address the points, and this judge clearly does. He lays out three questions he wants the parties to consider, and things are filed, and so I didn't see any problem with the way the district court handled Rule 56. Well, I don't think there's a, and we are not raising the issue as to whether him bringing up the issue, but once he brought up the issue, we have a problem with his decision, and I think the problem arises in this particular fashion. It has to do with, and this is also, I think, why the case is interesting and maybe even important, is that there is, it deals with the overlap between color of law and qualified immunity. Let me just put something very simple to you. If Nove and Hodges are state actors, then the doctrine of qualified immunity is available and has to be assessed and it has to be decided in any given case whether they're entitled to qualified immunity. And the district court decides that they are state actors and goes through that and decides that there isn't anything sufficiently clearly established to cast doubt on their actions. If they're not state actors, and I understand your view to be that since they originally denied being state actors, that somehow sticks with them, be that as it may. If they're not state actors, though, there's no 1983 case at all. I mean, you belong in state court with the trespass action. Well, that was the point I was bringing up because you can be a state actor and not be entitled to qualified immunity, as in the Richardson case. Oh, I certainly understand that, but I'm just saying there's sort of either branch of this tree leads you to problems because if they are state actors, then you've got to explain why qualified immunity doesn't apply on the merits, and if they're not state actors, you can't even be proceeding against 1983, and the judge, for that reason, would correctly have dismissed the action. He doesn't do anything with the supplemental state claim. He relinquishes his jurisdiction, so you're entirely free to pursue that, should you want to, in the state courts. Well, let me deal with the first branch first and not talk about the second branch because he decided that issue, and it's not on the issue of whether they're state actors is not on appeal before you. That's presumably something we would deal with at trial. But as Your Honor acknowledged, under Richardson, not every state actor is entitled to qualified immunity, and our position would be that once he raised the issue. Explain what you mean by that because obviously there are criteria. There has to be a violation of a constitutional right, and the law has to be clearly established, and the Supreme Court has made it quite clear that state actors don't do things like this at their peril. I mean, they're given a real breadth of action within which to work. It's got to be very clear it's a violation of, in this instance, the Fourth Amendment or whatever the constitutional provision may be. So that's just merits, but you're not saying that there's some state actors who can't invoke qualified immunity at all? Well, I think what Richardson is saying is, because Richardson is a 1983 case, in fact. But this isn't like the prison, the private prison. Well, Your Honor, let me quote from your opinion in Curry v. Chhabra, which was cited by both of the parties. What you said was in a detail, and you mentioned a detail. We speak for the court. It really wasn't just me off on my own. It was a three-judge opinion, but since your name is at the top, we think you wrote it. Well, I probably did write it, but only with the approval of the other two judges who were on the panel. Correct. But I thought it, and I apologize if I noted that and gave it more significance than it should be attached. But what the court said in Curry v. Chhabra was you mentioned a Sixth Circuit opinion in McClellan v. Teff, holding that a doctor providing psychiatric services to inmates at a state prison was not entitled to assert qualified immunity, and that was given as one alternative grounds or as dicta for rejecting the qualified immunity claim there. Now, qualified immunity is – But I'm still not clear whether you're accepting as law of the case, effectively, that Nove and Hodges were, in fact, state actors, that they were simply acting as the agents of the Rockford Housing Authority. We are. You are. Okay. Yeah. No, make no mistake about that. With respect to the specific conduct alleged here, they were carrying out a direct order of the Housing Authority. No, they were acting on behalf of the Housing Authority. It's not clear that there was a direct order. Well, you allege that they were ordered by the Housing Authority to change the locks, to enter the premises to change the locks. And they were doing that as an agent of and co-conspirator with the Housing Authority. That's the crux of your argument. And that being the case, then qualified immunity is available to them. No, it is not. What Richardson said is that there's a continuum. And if you take Richardson together with Filarski, there's a continuum. There's agents and there's agents. If you have a corporation which is providing services, and it's a private corporation systematically organized to assume a major administrative task for profit and in competition for other firms, then qualified immunity doesn't apply, and for very good reasons. Because it's a private corporation that's doing everything. It's making all the decisions. And there is this line of cases about the private prisons. But if a public agency simply hires an independent contractor to do something for it, the agency relationship looks much different. Well, it depends what they're being hired to do. And this is the point. Their qualified immunity, as I understand it, is an affirmative defense. It's not something that we have to plead and disprove. And we didn't plead and disprove it. They didn't plead it either. It was the court that brought this up. And either side was invited to engage in further fact-finding if they wanted to. But once it comes up, the burden is on you to show that there's no qualified immunity. Well, I don't know what it means by once it comes up. Well, this was at the Rule 56 stage, right? Correct. So no one's worrying about construing pleadings or anything. You could introduce whatever you wanted to in support of your side of this. I don't believe so. I mean, discovery had been closed. I mean, no one had addressed this issue during the depositions and for good reason. You could have asked the court in that instance to reopen. I think it's 56D. You could have said this is a bolt from the blue for us. We're going to need some more discovery. And if the judge said yes, you would have done it. And if the judge had said no, you would have added that to your list of issues on appeal. No, I think that since qualified immunity was the issue, which the judge had brought up without pleading by either side, it was then the burden of production, at least, of the defendants, to come forward with some detail as to why they were entitled to qualified immunity, as to why they were different from the firm in Richardson, and why they were more similar to the private individual in Pilarsky. And I think that is the nub of the issue because they didn't do so. And I think that it was their burden to do so once the court brought up the issue. We were not bringing up the issue. The court was bringing up the issue and giving both sides an opportunity to argue it, plead it, or prove it if they wanted to. And they chose not to. They rested on the discovery that had been done previously. And the only point, then, that the court considered was that there was some evidence that this was done at direction or behest or suggestion or whatever. Right. You need to wrap up if you want to spend any rebuttal time. I will reserve time for rebuttal. Okay. Thanks. Very good. All right. Mr. Rewbery. May it please the Court, and good morning. Patrick J. Rewbery, appearing on behalf of Appellees Nove and Hodges. I think the quickest way to cut through the Gordian Knot to the extent that one exists in this case is to recognize that there's been a forfeiture here. There was a forfeiture at the district court level as well as before this court. The second prong or question in the qualified immunity analysis was never addressed in any manner, shape, or form by Mr. Meadows, despite the court's direct instruction to do so. Because, remember, the court had already determined in the first summary judgment go around that there was a material issue of fact as to whether the consent to search clause in the lease agreement had been triggered. So the court basically said that, yes, there is evidence here which would permit a jury to possibly find that there was a constitutional violation. So this particular qualified immunity analysis was, for that reason, truncated. Well, I mean, I guess what Mr. Richards has been arguing is that the clearly established law is, in fact, Richardson, that this is a Richardson case, and therefore they couldn't do what they were doing. Well, Richardson doesn't apply because the facts, even when viewed in the light most favorable to Mr. Meadows, demonstrate that everything that was done was done at the behest of Rockford Housing Authority. And actually you can't rely on Richardson without contesting the whole state actor question to begin with. Exactly. At some point you start arguing against yourself, and that's usually a, you know, I don't want to be snarky, but every time I've argued against myself I've lost and lost miserably and embarrassingly. So the other question is, though, you know, this question whether there was an emergency worthy of entering into the apartment is certainly one that bothered the district court judge. You know, during the earlier phases of the case the district court judge wasn't willing to say that there was consent to enter, for example, because they had known about this other person in the apartment for quite some time, and maybe they were sort of worried about it, but it wasn't what you'd think. You don't think of it as an emergency. It's something that you let drift on for 30 days. And then when the judge turns it around and he says, well, you know, now I'm thinking about qualified immunity. Is there enough of a scrap of an emergency to justify the entry that way? And he says, well, maybe yes. But it's a difficult pivot to make, because he's actually very persuasively described why it's not an emergency in the earlier writings. Sure, I agree with that. But, again, you've got to look at it from Nove's level. He's basically, he's not deferring directly, he himself, with Mr. Pressman or Mr. Doyle, the Rockford housing people. He goes out there. He deals with this one individual. Well, Hodges tells him to go, right? Right, Hodges, who was a metro security official. And he tells him to go out there and take care of this problem. He meets with, he sees Mr. Sockway. Mr. Sockway is a little cagey and a little evasive, but does handle it with a key. But then they feel that the premises, they being Rockford housing, feels that the premises have to be secured. And the locks changed to protect the property and perhaps also protect Mr. Meadows himself, because nobody's heard from him. And so he goes out there and the door is locked. The lock has been changed. So I think that changes the picture. That particular fact is key, because all of a sudden, wait a minute, who changed the lock here? I mean, this is a senior facility. You've got people who are vulnerable. I mean, who knows what's going on? I myself have defended cases where, civil rights cases, where this organization that claims to be some type of autonomous republic of the United States takes over houses that are abandoned, taps into the neighbors' utilities, and does all manner of mischief, and the police are asked to handle this. So the idea that somebody taking over a property and doing something wrong or improper, that's not beyond the scope of reasonableness. So that's what he's confronted with. The lock has changed. And I think he acts reasonably, because he just doesn't tear the door down. He asks for instruction and follows that instruction. Get the locksmith. The locksmith to pick the lock and reopen it, because who knows what's going on in there? And the question is, was there guidance there available for him? And at that point, it became Mr. Meadows' burden to show, yes, there was law out there that would demonstrate to a reasonable officer that to do what Mr. Novy did was patently unconstitutional, and only somebody who was patently incompetent and would, in fact, pursue the course he did. And I think that's the crux of it. You can't impute what the RHA people, the Rockford Housing people, were thinking necessarily to Mr. Novy. Mr. Novy has to act on the facts that he has at the time. And the court, even though it didn't have to, went out and looked for law that might answer the question of whether the law was clearly established. Well, the court doesn't find any law that the judge regards to be at the appropriate level of specificity. I mean, the Supreme Court tells us all the time, you can't just sort of grandly say that there's a Fourth Amendment. You've got to get down to the facts. Right, and sometimes there just isn't, and this is that type of case, given what you have here. It's a unique situation because you have a private actor, but the private actor is acting under the direction of a public entity. Well, maybe not so unique. Be careful of the use of that word. I mean, I think this is actually not terribly uncommon, that there are contracts that are given out for all sorts of reasons. Yeah, and to basically go back to what you said about Richardson, if this had been not metro security but metro property management, then you might have something. But here they're asked to perform a certain task that's limited, and they don't seem to have a lot of discretion. All the evidence that is in the record suggests that Mr. Nove isn't walking around freelancing, trying to see if there are any issues, and patrolling on his own and making decisions. He's acting at the direct request of his boss, who in turn is following instructions provided by Rockford authorities. So under no circumstance is there any reasonable comparison between this situation and that presented in Richardson. And as the Filarski Court points out, long ago and before we had the professionalization of government, many people wore both hats, including Abraham Lincoln. He acted as a prosecutor. And if you were a member of a posse, you were for all practical purposes deputized and entitled to protections with that office. So, you know, it's not beyond the pale for the court to conclude that, yeah, he could be a state actor and still have the protections of qualified immunity. Unless I have any other questions, I would ask that you affirm the district court. All right, thank you. Thank you. I think you have about a minute, Mr. Richards. Thank you, Your Honor. I think we turn to the essence of the question, which is if they are not entitled to qualified immunity, it doesn't matter whether it's a clearly established right or not. If they are more in the position of Richardson than the position of Filarski, then they are not. The one task assigned or the one thing we're talking about may be limited, but it's clear even from what was said on summary judgment that this is an agency which performs investigative tasks. After all, he just didn't go to the apartment. He also went and talked to Sockwell. He checked other things. There was surveillance of the apartment over a period of time. There's evidence in the record that they're acting as a security agency. Now, is there a distinction between a security agency and a property manager? If so, it's a factual distinction, and it's something that should be addressed at trial, not on summary judgment. And there is also evidence in the record, which, of course, both sides have been switching as the issues change, and we acknowledge that, that, in fact, their direction wasn't that clear, that it was a suggestion that they should use. There is clear that there is a considerable level of discretion even in a particular task. But the reasoning of Richardson, which is that when you have a private agency performing a major function in a competitive market, qualified immunity is not necessary, not required, does not exist, and should have not been granted in this case. Thank you. All right. Thank you very much. Thanks to both counsel. We'll take the case under advisement, and the court is going to take a brief recess.